O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONI R. SANCHEZ,<br><br>       Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>       Defendant. | Case No. CV 16-05136-KES<br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff Toni R. Sanchez appeals the final decision of the Commissioner denying her application for disability and Supplemental Social Security Income benefits. <u>See</u> Administrative Record ("AR") 14-32. For the reasons stated below, the Commissioner's decision is reversed and this action is remanded for further administrative proceedings.

**I.**

**BACKGROUND**

**A.** <u>**Procedural History.**</u>

Plaintiff filed applications for Social Security Disability Insurance Benefits

1

("DIB") and Supplemental Security Income ("SSI") alleging a disability onset date of December 5, 2010. AR 178-85. Plaintiff claims she is disabled due to chronic back pain after failed back surgeries, fibromyalgia, obesity, and depression. (Dkt. 24 [Joint Stipulation or "JS"] at 2.)

Hearings were held before an Administrative Law Judge ("ALJ") on March 4 and June 4, 2014. AR 39-76. After the hearings, the ALJ propounded interrogatories ("rogs") on a medical expert ("ME") and a vocational expert ("VE"). AR 14-15; AR 901-21 (ME's responses to rogs); AR 324-30 (VE's responses to rogs). Plaintiff responded to the ME's new evidence by submitting additional evidence from one of her treating physicians. AR 15; AR 303-04 (letter from Plaintiff's counsel in response to ME's evidence); AR 922-23 (letter from Plaintiff's treating physician for pain management).

The ALJ issued a decision denying benefits on September 24, 2014. AR 32. Plaintiff sought review by the Appeals Council, which denied review. AR 1-4, 10, 335-36. Plaintiff then filed the instant action in this Court.

**B.     Overview of Plaintiff's Medical History.**

Plaintiff alleges a disability onset date of December 5, 2010. AR 178-85. In or around 2003, Plaintiff had spinal fusion surgery on her back. See AR 373-74, 480, 436 (treatment notes referring to prior surgery). Plaintiff began seeing rheumatologist Dr. Darice Yang, who diagnosed Plaintiff with degenerative joint disease of the back and fibromyalgia. AR 408, 410-12.

In the summer of 2011, Plaintiff underwent a second surgery, a spinal fusion of the L4-L5 vertebrae, performed by Dr. Christopher Aho. AR 349, 676-78. Plaintiff continued to see Drs. Yang and Aho and to complain of pain in her lower back and legs. See, e.g., AR 344-48, 377, 380, 398. Dr. Yang also noted fibromyalgia tenderpoints. AR 399, 401.

In December 2011, Dr. Aho referred Plaintiff to a pain management specialist, Dr. Ostam Khoshar, whom Plaintiff began seeing about once a month. See AR 436,

712. Dr. Khoshar prescribed narcotic pain medications and injections, and recommended physical therapy and psychiatric care. See AR 428-29, 433-35, 592-608, 710-11 (treatment notes for January 2012 through January 2013); AR 476-77 (hardware bursa injection in February 2012); AR 426-27, 478 (epidural steroid injections in March 2012); AR 576-77 (right stellate ganglion block in November 2012). Plaintiff also continued to see Dr. Yang approximately every six weeks. See AR 65 (hearing testimony). Dr. Yang prescribed arthritis medication, advised Plaintiff to exercise, and recommended psychiatric care. See AR 541-43, 546, 549-50, 552 (treatment notes from May 2012 through November 2012).

Plaintiff did not seek treatment with a psychiatrist or psychologist.[1] AR 57. Plaintiff did participate in physical therapy. AR 417.

In January 2013, Plaintiff had a third spinal fusion surgery performed by Dr. Aho. AR 624-28, 674-75, 687-88. Plaintiff thereafter continued monthly pain management treatment with Dr. Khoshar. See AR 698, 704, 708-10, 848-52, 857-63, 871-73, 880-86, 891-900, 924-29 (treatment notes from January 2013 to August 2014). She also continued to see Dr. Yang. See AR 776-81, 785-88 (treatment notes from March 2013 to May 2014).

In March 2013, on Dr. Khoshar's recommendation, Plaintiff had a spinal cord stimulator implanted as a trial. It was removed after a few days because Plaintiff reported that it was not helpful. AR 700-04; see also AR 64 (hearing testimony).

In July 2013, Plaintiff had an intrathecal morphine pump implanted; she initially reported improvement in her back pain and she stopped taking other narcotic pain medication. AR 57-58, 871, 875-79, 885. Dr. Khoshar performed a procedure to reposition the pump in October 2013. AR 861-63. In December 2013, Plaintiff continued to report that the pump decreased her lower back pain. AR 851-52.

---

[1] Plaintiff did have a one-time psychological evaluation as a prerequisite to getting the morphine pump discussed below. See AR 57.

However, Plaintiff also continued to report high levels of overall pain, at a level of 8, 9 or 10 out of 10. At the hearing before the AL, Plaintiff testified that the pump "took some of the edge off, like the buttock area. But the lower back, it hasn't taken the pain away at all." AR 58.

Several times after her third surgery, Dr. Yang noted Plaintiff's "narcotic dependence" and advised Plaintiff that being on narcotic pain medications could amplify her fibromyalgia pain. See AR 779, 781, 785-86. Dr. Yang suggested, "One of the newer treatments for fibromyalgia … could be naloxone; however, she would have to be off of narcotic for that and especially we need to formulate a low does that is used for fibromyalgia pain." AR 779.

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch

4

v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

**A.    The Evaluation of Disability.**

A person is "disabled" for purposes of receiving Social Security benefits if he is unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). A claimant for disability benefits bears the burden of producing evidence to demonstrate that he was disabled within the relevant time period. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

**B.    The Five-Step Evaluation Process.**

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n. 5 (9th Cir. 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if

so, disability is conclusively presumed and benefits are awarded. <u>Id.</u> §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work; if so, the claimant is not disabled and the claim must be denied. <u>Id.</u> §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. <u>Drouin</u>, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. <u>Id.</u>

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. <u>Id.</u> §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n. 5; <u>Drouin</u>, 966 F.2d at 1257.

## C.  **<u>ALJ's Application of the Five-Step Process in this Case.</u>**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 5, 2010 (her alleged onset date) and was insured through December 31, 2015. AR 18. He found that Plaintiff had the following medically determinable impairments: (1) fibromyalgia; (2) lumbar degenerative disc disease, status post surgeries in 2003, 2011, and 2013; (3) mild L5 denervation; (4) anemia; (5) obesity; and (6) a vitamin D deficiency.[2] AR 18. However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments in the Listing. AR 20-21.

---

[2] The ALJ found that Plaintiff had failed to establish that the following conditions were medically determinable: a thyroid condition, an irregular heartbeat, gastrointestinal problems, and psychiatric issues. AR 19-20.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work. AR 22. Specifically, he found Plaintiff: (1) can lift and carry up to 20 pounds occasionally and 10 pounds frequently; (2) can stand up to 2 hours, walk up to 2 hours, and sit up to 6 hours cumulatively in an 8-hour workday; (3) can alternate from sitting to standing and from standing to sitting up to 5 minutes every 2 hours; (4) can occasionally climb, balance, bend, kneel, and stoop, but can never crawl; (5) can frequently reach above shoulder level, handle, and finger with the left and right upper extremities; (6) must avoid frequent exposure to dust, fumes, smoke, excessive heat, possible electrical shock, and aerosolized chemicals; and (7) cannot work at dangerous heights or around dangerous moving machinery. AR 22.

Based on the rog responses from the VE, the ALJ determined that Plaintiff could perform her past relevant work as a legal assistant. AR 28-30. Alternatively, the ALJ determined Plaintiff could perform sedentary, unskilled occupations such as document preparer, charge-account clerk, and cashier II. AR 30-31.

### III.

### ISSUES PRESENTED

Plaintiff's appeal from the Commissioner's unfavorable decision presents the following three issues:

Issue One: Whether the ALJ failed to give proper weight to treating physicians and failed to support his reliance on the opinion of the non-treating, non-examining medical expert and state Agency consultants.[3]

Issue Two: Whether the ALJ's adverse credibility finding is legally and factually inadequate.

---

[3] As framed by the parties, Issue One also asks whether the ALJ failed to give proper weight to Plaintiff's subjective pain testimony. (JS at 3.) This opinion discusses Plaintiff's pain testimony under Issue Two, which considers the ALJ's adverse credibility finding.

1    Issue Three: Whether the ALJ failed to support his finding that Plaintiff could

2    perform her past relevant work as a legal assistant, or any other full-time work.

3    (Dkt. 24 [Joint Stipulation or "JS"] at 3-4.)

4                                            **IV.**

5                                      **DISCUSSION**

6    **A.    Issue One: Whether the ALJ Failed to Give Proper Weight to Plaintiff's**

7           **Treating Physicians and Failed to Support His Reliance on the Opinion of**

8           **the Non-Treating, Non-Examining Medical Expert and State Agency**

9           **Consultants.**

10   **1.    Legal Standard.**

11          In deciding how to resolve conflicts between medical opinions, the ALJ must

12   consider that there are three types of physicians who may offer opinions in Social

13   Security cases: (1) those who directly treated the plaintiff, (2) those who examined

14   but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff.

15   See 20 C.F.R. § 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as

16   amended on April 9, 1996).  A treating physician's opinion is generally entitled to

17   more weight than that of an examining physician, which is generally entitled to more

18   weight than that of a non-examining physician.  Lester, 81 F.3d at 830.  Thus, the

19   ALJ must give specific and legitimate reasons for rejecting a treating physician's

20   opinion in favor of a non-treating physician's contradictory opinion or an examining

21   physician's opinion in favor of a non-examining physician's opinion.  Orn v. Astrue,

22   495 F.3d 625, 632 (9th Cir. 2007); Lester, 81 F.3d at 830-31.

23          If the treating physician's opinion is uncontroverted by another doctor, it may

24   be rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.

25   However, "[t]he ALJ need not accept the opinion of any physician, including a

26   treating physician, if that opinion is brief, conclusory, and inadequately supported by

27   clinical findings."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord

28   Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The factors to be

                                             8

considered by the adjudicator in determining the weight to give a medical opinion include: "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Orn, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).

### 2. Medical Opinions in the Record.

#### a. Treating Sources.

On June 7, 2012, Plaintiff's rheumatologist Dr. Yang wrote a letter in support of Plaintiff's disability benefits application stating: "[Plaintiff] has been under my care for her medical condition and has been disabled since at least August 2011. She was last seen May 23, 2012 and at this time due to her medical conditions, qualifies for disability for up to one year until May 31, 2013." AR 713.

On January 28, 2013, approximately two weeks after Plaintiff's third spinal fusion surgery, her pain management specialist Dr. Khoshar completed a form in support of Plaintiff's application to discharge federal student loans and/or a teaching service obligation for a federal grant on the basis of disability. AR 617. He stated that Plaintiff "has chronic severe disabling pain all over her body, especially the back" and that "prolonged sitting, standing, walking, or lifting can cause severe pain." Id. He stated that Plaintiff "can perform activities of daily living but has constant pain." Id. He also stated that she had "limited residual functionality with lifting, standing, walking, pushing, pulling, and carrying." Id.

On March 20, 2013, Dr. Khoshar wrote a letter in support of Plaintiff's disability benefits application stating: "She has been a patient of mine since Dec 8, 2011 and suffers from chronic severe neck and back pain. Her diagnosis includes fibromyalgia syndrome, degenerative disc disease of the lumbar spine and failed back surgery syndrome. As a result of these conditions, she is unable to work and should be considered disabled." AR 661; AR 712 (duplicate).

         **b.**     Non-Examining ME.

Dr. Winkler, an internal medicine doctor and rheumatologist, answered 33 rogs from the ALJ on June 14, 2014. AR 909-21. Her answers were based on reviewing the case file. AR 902, 909.

When asked whether any of the treating sources' opinions were supported by signs and findings and consistent with the evidence in the record as a whole, Dr. Winkler opined, "[L]umbar MRI showed minimal findings after surgery yet very aggressive pain techniques used. Pain pumps/stimulators/narcotics are not recommended for treatment of fibromyalgia. ... [I]n general would normally not use narcotics/ stimulator/injections/pain pump for mild lumbar disease or fibromyalgia." AR 903, 911 (Rog 13); AR 913 (Rog 26). Dr. Winkler nevertheless opined that Plaintiff had been appropriately diagnosed with fibromyalgia, AR 903, 911 (Rogs 14-15), and that "more attention to treatment might improve" Plaintiff's fibromyalgia. AR 913 (Rog 25).

Dr. Winkler opined that Plaintiff's statements about the intensity and persistence of her pain and other symptoms were inconsistent with objective medical treatment history because "no lumbar MRI mild changes [sic]" and Plaintiff "reported swimming and walking 4x a week [for] 45 minutes at a time." AR 904, 912 (Rog 19). She opined that none of Plaintiff's impairments, taken individually or in combination, equaled any of the listed impairments. AR 904, 912 (Rog 22).

She gave a detailed opinion as to Plaintiff's RFC. AR 913 (rog 27). The ALJ adopted this RFC in large part, but he added more restrictions regarding alternating between sitting and standing, and avoiding exposure to dust, fumes, etc. AR 22.

**3.**    **The ALJ's Findings Regarding the Medical Opinions.**

The ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work. AR 22. In so determining, the ALJ gave greatest weight to the opinion of Dr. Winkler, the non-examining ME on whom the ALJ propounded rogs. AR 25. The ALJ noted, "I am mindful that Dr. Winkler is neither a treating provider

nor an examining source, and I have carefully considered the arguments advanced by [Plaintiff's] representative urging me to give this source's opinion less weight than those of [Plaintiff's] treating sources."  AR 25.

The ALJ gave the following reasons for giving Dr. Winkler's opinion more weight than Plaintiff's treating physicians: (1) Dr. Winkler "had access to more evidence than any other source"; (2) her opinion "is much more detailed and well explained than those of [Plaintiff's] treating sources," none of whom "gave any indication of what [Plaintiff] 'can still do'"; (3) the treating sources opinions' were "not well supported by the clinical data and treatment notes"; (4) the opinions of Drs. Khoshar and Yang were "tainted by [Plaintiff's] objective to obtain a report that states that she is disabled in order to receive benefits" and "seem[ed] to be actively assisting and advocating [Plaintiff's] efforts to obtain benefits, rather than simply treating her or offering an objective opinion"; (5) the treating sources' determination that Plaintiff was disabled were contradicted by their treatment notes "comment[ing] on, and commend[ing] the benefits of, [Plaintiff's] ability to engage in exercise." AR 24-25.  Additionally, the ALJ noted that Dr. Khoshar's opinion was not "clearly inconsistent with the narrow range of work activities" in the ALJ's RFC determination.  AR 25.

Plaintiff argues the ALJ should have given controlling weight to the opinions of her rheumatologist Dr. Yang and her pain management specialist, Dr. Khoshar. (JS at 4, 14.)  Plaintiff argues that the ALJ "failed to provide … 'specific legitimate reasons'" for relying on Dr. Winkler's contrary opinion.  (JS at 8.)  As discussed in more detail below, the Court finds that the reasons given by the ALJ are specific and legitimate reasons for giving Dr. Winkler's opinion more weight than the opinions of Plaintiff's treating physicians.

### 4.  Analysis.

      a.  The ALJ did not err in declining to rely on conclusory opinions from Plaintiff's treating physicians stating that she is disabled.

The June 2012 opinion from Dr. Yang and the March 2013 opinion from Dr. Khoshar are conclusory, stating only that Plaintiff is "disabled."  <u>See</u> AR 398, 712. These opinions do not attempt to explain Plaintiff's functional limitations or give an explanation as to why Drs. Yang and Khoshar believed Plaintiff to be disabled.  Dr. Winkler, in contrast, determined the specific RFC that she believed Plaintiff retained in light of Plaintiff's medical history.  <u>See</u> AR 913 (Rog 27).  The ALJ was therefore justified in declining to rely on these opinions from Plaintiff's treating physicians. <u>See</u> <u>Batson v. Comm'r of SSA</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole … or by objective medical findings[.]");  20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. … A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.");  <u>see</u> <u>also</u> 20 C.F.R. 416.927(d)(1) (same).

      b.  The other opinions to which Plaintiff cites are actually consistent with the ALJ's ultimate RFC determination.

First, Plaintiff points to a March 28, 2017 treatment note that she says is from Dr. Khoshar.  (JS at 5, citing AR 417-18.)  These notes are not from Dr. Khoshar, however; they are addressed *to* Dr. Khoshar and Dr. Yang *from* a physical therapist who treated Plaintiff after her back surgery.  AR 417-18.

Under Social Security regulations, a physical therapist is not an acceptable medical source.  <u>See</u> 20 CFR § 404.1513(d).  Only acceptable medical sources can give "medical opinions" within the meaning of the Social Security regulations and "can be considered treating sources … whose medical opinions may be entitled to controlling weight."  SSR No. 06-03p, 2006 SSR LEXIS 5, *3-4.  "Nevertheless,

evidence from 'other medical' sources, that is lay evidence, can demonstrate the 'severity of the individual's impairments and how it affects the individual's ability to function.'" Gooden v. Colvin, No. 15-9202-PLA, 2016 WL 6407367 (C.D. Cal. Oc. 28, 2016) (quoting SSR No. 06-03p).

In a March 28, 2012 treatment note, the physical therapist filled out a chart called "The Patient-Specific Functional Scale." AR 417-18. This scale ranked Plaintiff's ability to stand for 10 minutes, walk for 10 minutes, and sit for 5 minutes in the car. AR 418. The ranking uses a scale of 0 to 10, with 0 meaning "unable to perform activity" and 10 meaning "able to perform activity at the same level as before injury or problem." Id. The chart indicates significant improvement in these abilities between February 2, 2012 and March 28, 2012. For example, the chart ranked Plaintiff's standing abilities at 1 in February and at 6 in March. It ranked her walking abilities at 5 in February and at 8 in March. The combined average score for all of the categories doubled during this time, from 3.33 to 6.66.

Second, Plaintiff points to a form Dr. Khoshar completed on January 28, 2013 in support of Plaintiff's application to discharge student loans and/or a teaching service obligation due to disability. AR 617. Dr. Khoshar stated that Plaintiff had been diagnosed with post laminectomy syndrome of the lumbar spine and fibromyalgia. Id. He stated Plaintiff had "chronic severe disabling pain all over [her] body, especially the back"; that she had "failed back surgery"; that "*prolonged* sitting, standing, walking or lifting can cause [her] severe pain"; that she "*can* perform activities of daily living but has constant pain"; and that she had "*limited* residual functionality with lifting, standing, walking, pushing, pulling, and carrying." Id. (emphasis added).

As noted above, the ALJ determined that Plaintiff could perform a limited range of sedentary work, and found that Dr. Khoshar's opinion was not "clearly inconsistent with the narrow range of work activities" in this finding. AR 22, 25. The ALJ agreed with Dr. Khoshar that Plaintiff could not sit, stand, or walk on a

"prolonged" basis, finding that she could stand for 2 hours, walk for 2 hours, and sit for 6 hours in an 8-hour day. AR 22. The ALJ likewise agreed that Plaintiff had a "limited" RFC regarding lifting, finding she could lift and carry only 20 pounds occasionally and 10 pounds frequently. AR 22. Additionally, the functional scale completed by the physical therapist showed Plaintiff's abilities in these areas were improving. AR 417-18. Plaintiff has failed to demonstrate that giving more weight to Dr. Khoshar's January 2013 opinion or the physical therapist's observations would have resulted in a different RFC finding and therefore a different ultimate finding of disability.

### 5. Conclusion.

The Court finds no error in the ALJ's reliance on the opinion of the non-treating and non-examining ME, Dr. Winkler, rather than on the opinions of Plaintiff's treating physicians, Drs. Yang and Khoshar. The treating physicians' opinions are either conclusory or do not indicate further work limitations than those imposed by the ALJ.

## B. Issue Two: Whether the ALJ's Adverse Credibility Finding is Legally and Factually Adequate.

### 1. Legal Standard.

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

If the ALJ finds testimony as to the severity of a claimant's pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958

(9th Cir. 2002). If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing. Id.

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. Smolen, 80 F.3d at 1284; Thomas, 278 F.3d at 958-59.

**2.    Application of SSR 16-3p.**

The Social Security Administration ("SSA") recently published SSR 16-3p,

15

2016 SSR LEXIS 4, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims. SSR 16-3p eliminates use of the term "credibility" from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. <u>Murphy v. Comm'r of Soc. Sec.</u>, 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D. Tenn. May 18, 2016). SSR 16-3p took effect on March 16, 2016, and therefore is not applicable to the ALJ's 2014 decision in this case. <u>Id.</u>

Plaintiff argues that this Court should apply SSR 16-3p retroactively because it is "a clarification of sub-regulatory policy, rather than a new policy." JS at 22. At least three district courts in this Circuit have addressed this issue and found that SSR 16-3p does not apply retroactively, reasoning that Congress has not authorized the Commissioner to engage in retroactive rulemaking. <u>See</u>, <u>e.g.</u>, <u>Wright v. Colvin</u>, No. 15-02495, 2017 WL 697542, at *9 (N.D. Cal. Feb. 22, 2017); <u>Smith v. Colvin</u>, No. 15-1625, 2017 WL 388814, at *4 n.2 (D. Oregon Jan. 27, 2017); <u>Thayer v. Colvin</u>, No. 16-545, 2017 WL 132450, at *7 (W.D. Wash. Jan. 13, 2017). Plaintiff has cited no authority to the contrary. (JS at 22, 26-27.) This Court "cannot assign error to the ALJ for failing to comply with a regulation that did not exist at the time." <u>Garner v. Colvin</u>, 626 F. App'x 699, 701 (9th Cir. 2015) (discussing a different SSR).

Moreover, the Ninth Circuit has suggested that SSR 16-3p is consistent with the standard previously laid out by the Ninth Circuit in the case law described above. <u>See</u> <u>Trevizo v. Berryhill</u>, 862 F.3d 987, 1000 n.5 (9th Cir. 2017) (noting that SSR 16-3p simply "makes clear what our precedent already required," i.e., that the ALJ is "not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness," but rather focus on "evaluat[ing] the intensity and persistence of [the alleged] symptoms"). Thus, it is not clear that applying SSR 16-3p in this case would materially affect the Court's analysis.

### 3. The ALJ's Findings.

The ALJ found that Plaintiff's "medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible…." AR 23. The ALJ gave several reasons for this credibility finding.

First, the ALJ found that the "treatment records at times refer to [Plaintiff] engaging in activities that appear to be inconsistent with some of her more extreme allegations in this case," such as swimming and walking, and Plaintiff reported that "she is generally able to tend to some of her personal needs, drive short distances, and engage in other activities that one might not expect a person with [Plaintiff's] alleged disabling symptoms to be able to perform." AR 26-27.

Second, the ALJ found that "with regard to [Plaintiff's] other impairments [other than her back problems], her care has consisted mainly of conservative measures such as the prescription of medications and monitoring," and particularly with regard to the fibromyalgia, ME Dr. Winkler suggested that Plaintiff could have sought "more consistent and/or more aggressive forms of care." AR 26-27.

Third, the ALJ found that Plaintiff's "work history and statements about that work history also tend to undercut the overall credibility of her claims in this case" because she did not "perform[] significant gainful activity in several years when she does not claim to have been disabled … , which at least arguably suggests that [Plaintiff] has a comparatively weak commitment to engaging in work, even when able to do so." AR 27-28.

**4.      Analysis.**

Plaintiff argues that "the ALJ failed to adequately support [the] adverse credibility finding" and "while specific, none of the ALJ's credibility findings are 'clear and convincing.'" (JS at 23, 27.) The Court agrees.

        a.      The ALJ failed to explain how Plaintiff's daily activities are inconsistent with her testimony.

In finding that Plaintiff's daily activities were inconsistent with her assertion

17

of disability, the ALJ cited two exertion questionnaires completed by Plaintiff in May 2012, see AR 222-26, and December 2012, see AR 238-40, as well as Plaintiff's hearing testimony, see AR 43-72. In the questionnaires, Plaintiff stated that she prepares one meal a day; takes 15-minute exercise walks on her doctors' orders; grocery shops with the aid of a motorized cart and her children; drives her son to his school about 5 minutes away; and drives to her doctor's office. AR 238-39, 223. She stated she sometimes does dishes and vacuuming, but this "has [her] off her feet for the rest of the day," and she does no other chores. AR 222, 224, 239-40.

At the hearing, Plaintiff testified that she left her job as a paralegal because "I couldn't – still, I still can't sit for very long. I can't stand for very long." AR 56. At the time of the hearing, she testified that she could remain standing "maybe about five to seven minutes" without experiencing pain or discomfort. AR 59. She testified that as soon as she sits down and "put[s] the pressure on [her] buttocks, [the pain] starts shooting up to [her] back." AR 60. Regarding the use of her hands, she testified, "My hands were tingling to where I can't really hold a pen and just write." AR 56. She also testified, "My hands feel like when I go to bend them, like they're going to break," and that when she tries "to grip something, I feel pain shooting from my hands, my wrists, my elbows, up into my shoulder." AR 58-59. She testified she had buttoned the buttons on her outfit that day, but "when my hands are very swelled up, then I will have a hard time buttoning my clothes or zipping my pants." AR 62. Plaintiff testified that she will "take a bath to relieve the pain" and "sometimes [she does not] take a shower because [she is] in too much pain." AR 61. She testified that her son helps her take a bath and shave her legs, and her daughter helped her place her hair in a bun on the day of the hearing. AR 61-62.

The ALJ found that this evidence showed that Plaintiff "is generally able to tend to some of her personal needs, drive short distances, and engage in other activities that one might not expect a person with [Plaintiff's] alleged disabling symptoms to be able to perform[.]" AR 27. He found these activities, along with the

18

treatment notes' references to swimming and exercising, "difficult to reconcile with some of [Plaintiff's] more drastic claims regarding her ability to stand, walk, and move her body." AR 27. The ALJ clarified:

> I am not saying that [Plaintiff's] activities, by themselves, equate with work activity or show the ability to engage in work. The ability to engage in some daily activities does not prove that one is able to perform competitive work on a regular and continuous basis. Rather, [Plaintiff's] activities suggest two points to me. First, they suggest that [Plaintiff] has greater capabilities than she has alleged. This, in turn, indicates that [Plaintiff] has not been completely frank, and makes me cautious about fully accepting the claims advanced in this case.

AR 27.

The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities … does not in any way detract from her credibility as to her overall disability." Orn v. Astrue, 495 F.3d 625, 639 (2007) (quoting Verigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit has described two circumstances in which daily activities can form the basis of an adverse credibility determination: (1) if they contradict the Plaintiff's testimony, or (2) if they "meet the threshold for transferable works skills." Id.

The ALJ expressly stated that Plaintiff's activities did not meet the threshold for transferable work skills. Yet he failed to explain how the activities, as Plaintiff described them, specifically contradicted her testimony. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); Derr v. Colvin, No. 12-00415, 2014 WL 5080437, at *12 (D. Ariz. Oct. 9, 2014) ("Only when a level of activity is inconsistent with a claimant's claims of limitations should those activities have any bearing on the claimant's credibility."). This is not a clear and convincing reason for discounting her subjective complaints of pain.

19

    b.  It is not clear whether Plaintiff's ability to swim, walk, and perform other exercise is inconsistent with her claimed limitations.

  As an additional reason for finding Plaintiff's complaints of pain not credible, the ALJ found that "treating sources … have commented on, and commended the benefits of, [Plaintiff's] ability to exercise." AR 24. The ALJ cited treatment notes from Dr. Yang, which they state that Plaintiff "swims everyday [for] 45 minutes," AR 543 (October 2012); "continues to swim 45 minutes every day when she can," AR 541 (November 2012); "continues to exercise with swimming and walking every other day," AR 785 (June 2013); and "she did start exercising with swimming already," AR 778 (December 2013).

  Plaintiff argues that the ALJ misinterpreted these treatment notes, which merely reflect that Plaintiff was "struggling through [pool] therapy sessions"; Plaintiff argues that other records "explain[] the low level of exercise and its therapy base[.]" (JS at 19, 21 [citing AR 417, 670].) Plaintiff cites the March 28, 2012 treatment note from Plaintiff's physical therapist stating: "Goal is to wein [sic] off pool program [and] transition to land based therapy" and to "decrease difficulty standing and walking 15' [feet]." AR 417. Plaintiff also cites a September 2011 treatment note referring to "pool therapy" rather than swimming. AR 670; see also AR 380 (Dr. Aho recommends one month of "pool therapy"). The Commissioner argues that the records Plaintiff cites "predate the ALJ's references to regular exercise by more than one year" and "that Plaintiff had pool therapy in 2011 and 2012 does not mean that she did not swim and walk regularly in 2013, as she told her doctors at that time." (JS at 25.)

  There is a significant difference between participating in relatively sedentary "pool therapy" and swimming laps vigorously for 45 minutes. It is not clear on which end of the spectrum Plaintiff's activities fell, and Plaintiff was engaging in this exercise on the recommendation of her treating physicians. See Vertigan v. Halter,

260 F.3d 1044, 1050 (9th Cir. 2001) ("[A]ctivities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain. A patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved."); Waldon v. Colvin, No. 15-0631, 2016 WL 4501074, at *4 (S.D. Cal. Aug. 29, 2016) (noting that "a social security claimant may engage in exercise for therapeutic reasons despite pain" and finding that "Plaintiff's attempts to comply with the exercise regime suggested by his providers is not a clear and convincing reason to reject [a treating physician's] report about Plaintiff's pain levels"). Because the record is ambiguous as to the nature and extent of Plaintiff's exercise, the treatment notes' references to swimming and walking do not provide substantial evidence for the ALJ's conclusion that Plaintiff's ability to exercise was inconsistent with her claimed limitations.

       c.     The ALJ did not adequately explain his assertion that Plaintiff's treatment for fibromyalgia has been inconsistent and/or too conservative.

The ALJ admitted there was "no dispute that [Plaintiff] has had significant back problems that have been treated with surgery on several occasions," but he found that "with regard to [her] other impairments, her care has consisted mainly of conservative measures such as the prescription of medications and regular monitoring." AR 26. Regarding Plaintiff's fibromyalgia, the ALJ found it "noteworthy that the medical expert [Dr. Winkler] – who is a board-certified rheumatologist … – opined that 'more attention to treatment might improve [this] condition' … adding that many of the measures already employed 'in general would normally <u>not</u> [be] use[d]' for 'mild lumbar disease or fibromyalgia." AR 26. The ALJ concluded, "[I]f [Plaintiff's] conditions were as she claims, one might expect that she would have sought – and, if warranted, received – more consistent and/or more aggressive forms of care." AR 27.

Evidence of conservative treatment can be a reason for discounting a plaintiff's testimony regarding the severity of an impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). Here, however, it is not clear whether the ALJ concluded that Plaintiff's treatment for fibromyalgia was too conservative or too aggressive. The ME Dr. Winkler opined: "[L]umbar MRI showed minimal findings after surgery yet very aggressive pain techniques used. Pain pumps/stimulators/ narcotics are not recommended for treatment of fibromyalgia." AR 911 (Rog 13). Dr. Winkler therefore appeared to criticize these treatments as too aggressive. Yet the ALJ appeared to rely on Dr. Winkler's opinion to find that Plaintiff's treatment for her fibromyalgia had been too conservative. AR 27.

Plaintiff cites a December 2013 treatment note from Dr. Yang that states in relevant part: "I discussed that being on narcotics can cause pain amplification with fibromyalgia. … One of the newer treatments for fibromyalgia I also discussed could be naloxone; however, she would have to be off of narcotic for that and especially we need to formulate a low does that is used for fibromyalgia pain." AR 779. This note suggests that there were other avenues of treatment Plaintiff could pursue for her fibromyalgia, but also that such treatment might interfere with the treatment for her back pain. The ALJ did not discuss this note.

    d.    The ALJ's finding that Plaintiff had a weak commitment to engaging in work is not supported by substantial evidence.

The ALJ found that Plaintiff had "not performed significant gainful activity even in several years when she does not claim to have been disabled … which at least arguably suggests that [Plaintiff] has a comparatively weak commitment to engage in work, even when able to do so." AR 28. The ALJ acknowledged Plaintiff's testimony that, during these periods, she had been caring for sick relatives. AR 28; see also AR 67-69 (Plaintiff's testimony describing how she had cared for her grandfather, who had dementia, and then her mother, who had a nervous breakdown after the unexpected death of Plaintiff's stepfather).

The ALJ nevertheless found Plaintiff had a weak commitment to work because:

> [Plaintiff] testified at the June 4, 2014 hearing that she worked as a medical assistant for only one day and left that job after finding out some new information, which at least arguably suggests to me that [Plaintiff] would have – and could have – continued working in this job if not for business reasons wholly unrelated to her health.

AR 28. When Plaintiff testified about this, the ALJ failed to ask any follow-up questions about what information Plaintiff learned that caused her to leave the job, or otherwise develop the record on this point. AR 50-51.

Plaintiff also continued to work after leaving that job as a medical assistant; she later worked in a law office as a receptionist and paralegal. See AR 46-50 (Plaintiff's testimony that her last job in December 2010 was at a law firm and that, prior to this, she had worked as a medical assistant and certified nursing assistant); AR 206 (work history report completed by Plaintiff, stating that she worked as a certified nurse between 2001 and 2002 and worked as an assistant in a law firm from 2006 to 2010). The law firm where she worked submitted a letter, dated December 22, 2012, stating that Plaintiff "was an excellent employee" but was laid off because "problems with her back and health issues became so acute that she was not able to perform her duties. … [H]er job was waiting for her at such time as she recovered…." AR 623. This letter undermines the ALJ's finding that Plaintiff had a weak commitment to work and was not discussed by the ALJ.

Plaintiff adequately explained the gaps in her employment due to caring for sick relatives, and the ALJ did not sufficiently develop the record about why she voluntarily left one position as a medical assistant. Thus, the ALJ's finding that Plaintiff had a weak commitment to work is not supported by substantial evidence.

**5.    Conclusion.**

In sum, the ALJ failed to give clear and convincing reasons, supported by

substantial evidence, for finding Plaintiff's pain testimony not credible. Plaintiff argues that her testimony should therefore be credited as true. (JS at 23.)

Upon review of the Commissioner's decision denying benefits, this Court has "power to enter … a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If additional proceedings can remedy defects in the original administrative proceeding, a Social Security case usually should be remanded. Garrison v. Colvin, 795 F.3d 995, 1019 (9th Cir. 2014). However, courts will sometimes reverse and remand with instructions to calculate and award benefits "when it is clear from the record that a claimant is entitled to benefits, observing on occasion that inequitable conduct on the part of the Commissioner can strengthen, though not control, the case for such a remand." Id.

In Varney v. Secretary of Health and Human Services ("Varney II"), 859 F.2d 1396 (9th Cir. 1988), the Ninth Circuit adopted the "credit-as-true" rule: that is, "if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true." Id. at 1398. The rule does not apply in all cases, however. Varney II "was specifically limited to cases 'where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited.'" Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009) (quoting Varney II, 859 F.2d at 1401). In Garrison v. Colvin, 795 F.3d 995 (9th Cir. 2014), the Ninth Circuit laid out three criteria that, if met, warrant application of the credit-as-true doctrine:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

24

> discredited evidence were credited as true, the ALJ would be required
>
> to find the claimant disabled on remand.

Id. at 1020. In evaluating the first issue, courts "consider whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103-04 (9th Cir. 2014).

On the present record, the Court cannot say that the record has been fully developed and further administrative proceedings would serve no useful purpose. As discussed above, there are conflicts and ambiguities in the record regarding, for example: (1) whether the ALJ believed Plaintiff's treatment for her fibromyalgia was too aggressive or too conservative, (2) why Plaintiff left a job as a medical assistant after only one day, and (3) the rigorousness of Plaintiff's swimming and exercising.

The Court also cannot state definitively that, if the improperly discredited evidence were credit as true, the ALJ would be required to find Plaintiff disabled on remand. The VE opined that, if Plaintiff's testimony about her own abilities were accepted as true, Plaintiff would not be able to perform her former work or any other jobs in the national economy. AR 330. Yet, as discussed above under Issue One, the ALJ gave legitimate reasons for relying on the opinion of Dr. Winkler rather than on the opinion of Plaintiff's treating physicians. The RFC determined by the ALJ was consistent with that opinion. Accordingly, remand for further proceedings is the appropriate remedy.

C. **Issue Three: Whether the ALJ failed to support his finding that Plaintiff could perform her past relevant work as a legal assistant, or any other full-time work.**

Under Issue Three, Plaintiff argues that the ALJ erred in "adopt[ing] verbatim the RFC articulated by the ME" Dr. Winkler and then "proffer[ing] several hypotheticals reflecting the RFC of sedentary work with limitations" to the VE. (JS

at 27-28.)  This is essentially a restatement of her argument that the ALJ's RFC finding did not account for all her limitations.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir. 2008) ("In arguing the ALJ's hypothetical was incomplete, Stubbs-Danielson simply restates her argument that the ALJ's RFC finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts.").

**V.**

**CONCLUSION**

Based on the foregoing, IT IS ORDERED that judgment shall be entered REVERSING the decision of the Commissioner denying benefits and REMANDING for further proceedings consistent with this Opinion.

DATED:  September 07, 2017

_____
KAREN E. SCOTT
United States Magistrate Judge